Good morning, Judges. May it please the Court, David Mastagne appearing on behalf of Appellants Anthony Sanders et al. I would like to reserve five minutes for rebuttal. Here, the trial court failed to address Appellants primary legal claims that the opt-out fee is an unlawful deduction and instead erroneously held, quote, all issues rise and fall with the determination of whether or not the plan is bona fide. However, this case deals with three distinct issues. Only the exclusion of the portions of the flex allowance Appellants use to purchase their benefits rise and fall with the determination of whether or not the plan is bona fide. The gravamen of the claims seek restitution of the opt-out fee deduction through overtime claims based on this circuit's precedent that no overtime is deemed paid until all straight-time compensation has been paid. Defendant unlawfully kicked back. Well, isn't this all, I mean, you've made a couple different arguments, but it seems that it all kind of centers back on two questions, right? Was this an appropriate exclusion under 207E4 and was this plan bona fide? It seems that the answers to those two questions would resolve these other arguments like the kickback argument. No, Your Honor, because what the court ruled broadly was that cash-in-lieu payments were exempt under E4 as incidental to a bona fide plan, but the court disregarded this circuit's precedent that direct employer payments to the opt-out plaintiffs cannot be excluded based on claims that the plan was bona fide. The defendant even concedes this aspect of the ruling was after the opt-out fee was reduced, right? Your clients received some amount of cash. Well, I think, Judge, you're getting really to what the heart of the, I think, dispute is here, and in this case, the full allowance was paid as income to the opt-out plaintiffs before it was deducted and then transferred to the unions, and then the unions purchased health insurance, on behalf of other employees. Right, but you're basing this off of like pay stubs, right? And I'm not sure that's dispositive for FLSA purposes. Those are in pay stubs for other reasons like tax reasons. Well, first, the courts have said that pay stubs are an indicator, but to your greater point, benefit contributions are not considered income under Section 106 of the Internal Revenue Code. Thus, defendant's concession that the full flexible benefit allowance is paid to the plaintiffs as income within the meaning of Internal Revenue Code Section 61 and reflected on their pay stubs as earning is really dispositive of their claims in this case. The defendant tries to escape this admission by asserting that the opt-out fees are never actually paid out to plaintiffs, but that's true of every deduction. It wouldn't make any sense, and the regulations would provide no protection at all if, in order to be a deduction, it had to be paid out to the employee and then recouped by the employer. Here, the full amount is paid out as actual money, not a theoretical credit, and it's commingled with all other incomes. The actual monies are deducted from the gross income for any purchased insurance and transferred to the plaintiff's respective unions, regardless of whether the insurance is cost more or less than the full allowance. There's no conversion of a credit to monies. Any portion of the allowance that's not spent remains as income and is ultimately received as cash. For the employees who opt out, the county involuntarily deducts a dollar amount from their income that they unilaterally set as the opt-out fee. That deducted money is then transferred to the unions, and the unions use that to defray the cost of other employees' insurance costs. There is no theoretical credit that's eliminated. It's real cash that's actually deducted, and the leftover portion of the allowance remains as income and is illustrative of what happened. So what is counted as income? The amount that's left over? No. The defendant has admitted that the entire amount of the allowance is considered income for all of the employees. The opt-out fee was considered by the trial judge to be cash in lieu. It's expressly held that that's cash in lieu, and the error is in saying that that cash in That's why we've asserted over and over that whether or not the plan is bona fide is really immaterial to the gravamen of the claims. That issue only pertains to people who used the allowance to purchase health benefits, and in the circumstances where the plan's not bona fide under Flores, then even the amounts that were contributions towards the health insurances can't be excluded from the regular rate. But when we're dealing with the opt-out plaintiffs, these are individuals who didn't get any contribution towards health insurance. They were paid the full allowance as income, and then it was improperly deducted from their wages, and real money was taken from their income and paid to the unions, who then paid it to a third party, to the health insurance companies to provide benefits for other employees. So just to clarify, so you're saying the entire amount of the flex credit before any opt-out fees were taken out, that entire amount was treated as income for the employees? Absolutely. Okay. So then the question is, what authority do we have that says that that treatment of payments as income tells us the answer to the FLSA question about whether that amount should be included in a regular rate of pay? What authority would you direct us to? There are Bruzzini v. Cable Communications, 851 F. 3rd, 990 at 996, Ninth Circuit case, and the Ninth Circuit has consistently held that all payments forming part of an employee's normal weekly income must presumptively be included in the regular rate. Presumptively, right? But then things can be excluded. Absolutely. Okay. So then doesn't that now get us to the question of whether the amount of the opt-out fee was properly excluded? Precisely. The way that the FLSA is structured is the burden then flips to the defendant to prove an entitlement to one of the exclusions, and the E-4 exclusion is not available in this circumstance under Flores because this is a direct payment, that allowance, the direct payment from the employer to the opt-out plaintiff. The requirement of E-4 says that the contribution must be irrevocably paid to a third party, and Flores said where the payments are directly to the employees, they cannot be excluded. Does your whole argument hinge on what this seems to be a sort of technical that you're claiming it technically hit their income and then was rerouted to the unions? I mean, in effect, they never had it. It was given to the unions. That's true of any deduction. That's true of if you have an alimony deduction, you don't actually receive that money. It's deducted from your paycheck and then provided to your ex-spouse. Okay. But I'm trying to understand, I guess, what is the crux of your argument that E-4 does not apply because these employees were not receiving health insurance? The ones who opted out? In part, Your Honor, that is a part of it. But the other aspect is they received these allowance payments as income directly from the employer before they were deducted, then paid to the union, who then did a separate transaction purchasing health insurance from health employers. And even under this theory, Regulation 778.215A5 expressly prohibits that. It says that in order to qualify for an E-4 exemption, a plan must not give an employee the right to assign his benefits under the plan. So treating the opt-out fee as a benefit contribution for other employees would constitute a prohibited assignment. Well, I mean, I don't think anybody is assigning anything here. I don't really see how that's relevant. I guess what I'm trying to understand from your argument is whether your argument turns on the technical way in which these payments were transmitted and the technical way in which this was set up. Or is your argument a sort of more fundamental one that just says, look, E-4 really should not apply when somebody is not receiving the health insurance? Because the latter is what I had understood to be the crux of this, not some technical issue about where exactly the money landed. Because we know the money is going to the unions to pay for other people's health insurance. That's just that's how this is being used. It's both issues, Your Honor. And I think perhaps a good way to think of it is ordinarily, you have an employer tells an employee, here's a menu of health benefits. You select what you want. And then the employer makes the contribution to the insurance company to purchase the benefit for the employee. And if you have a cash back, the employer says, if you choose to waive it, instead of me making a contribution to this third-party insurance company, I'll give you a specified amount in cash. Ventura could have set up their plan that way, but they chose not to. Instead, what they did is they paid, and this is unique to the FHIR employees and the deputies that are the plaintiffs in this lawsuit. They paid those employees the allowance as income, and they've admitted that it's income. And as I specified, income does not include benefit contributions under the IRS code that they cite to as their explanation of these payments. And then those employees deduct their purchases. And focusing just on the opt-out fee, the opt-out fee is involuntarily deducted, and then it's paid to the union, not an insurance company. And then the union makes a payment to the insurance companies to defray the cost of the employees who actually receive the benefits. I guess I'm still having trouble seeing how this isn't excluded under the plan that provides health insurance for employees. That's how this money was being used. It wasn't being used for people who opt out, but that's because they opted out of the health insurance. It doesn't take away from the fact that the funds were, in fact, being used for the health insurance of people who are employees. But they paid it to the employees before they deducted it. That's the difference, and that was the point that I was trying to make, Your Honor. So you're relying on the pay stub being the critical fact. It's not just the pay stub, Your Honor. We took a PMK deposition, and we have admissions under oath, and there's also judicial admissions in the pleadings that the defendants acknowledge that these payments, these allowance payments, are income to the opt-out plaintiffs under IRS Code Section 61. And so that issue is dispositive, is once you are paying these payments are income payments, then the regular rate has to be calculated on a pre-deduction basis, and before any overtime can be deemed to be paid, the opt-out employees have to have the improper deductions restored. But where are you getting this from in the statute, right? Because, I mean, it provides as a default rule that it includes all remuneration, and then it says it doesn't include these other things, and one of those things is contributions to a benefit plan. I mean, you seem to be saying, well, because it technically went to them first, even though we all know it was supposed to, it was going to be then going to a third party, that's what the terms of this arrangement were spelled out for employees ahead of time, we still need to just, everything rides on the fact that it was first initially rooted to the employees? Yes, it's very similar to Flores itself. In Flores, the defendant made an argument that the direct payment from the employer to the employees generally satisfied the E-4 exemptions, and the court said where the statute is clear that the courts are not at liberty to expand the exemption beyond its plain terms, and here the payments were made directly to the employees. Right, but, I mean, Flores made it, it had two parts to it, right? One was the cash payments that stayed with the employees, the other part of it was the payments, the amounts that were then used for the benefits, and there Flores had a whole analysis as, you know, was this a bona fide plan? I mean, it seems that by logic of your argument, all of this money should have just been treated as cash. Well, Flores ultimately said that all of the benefits in that case had to be included because the plan wasn't bona fide, but there's a separate aspect of that ruling that the cash in lieu amounts, regardless of whether or not the plan was bona fide, had to be included because they were paid directly to the employees, and the defendant tried to argue that, well, yeah, the employer paid them directly to the employees, but it's functionally the same as if we had paid them to the insurance company, and then the insurance company had given them an incidental cash back. Right, but that's, I think, why the city here, or the county, excuse me, is not arguing that the take-home cash was excluded. They're acknowledging that goes into the regular rate of pay. That's a smaller number than the number you want, though. They're saying that the post is broad. He says that all of the... No, but I think the county acknowledges that in their answering brief. They tried to... I was confused by that, too, when I first read it, and we'll hear what the county has to say from that, but it doesn't seem, as a factual matter, that the county is actually treating that take-home cash as excluded. Well, the court treated the entire allowance as cash in lieu and didn't make that distinction between the deducted amounts and the net amount of the allowance that was provided. Okay, we've kept you on the run here. Why don't we give you two minutes when you come back? Thank you. Good morning. The first thing that I want to talk about is, I think that the court actually zeroed in on the precise issue here, which is that appellants are relying on the pay stub and what the pay stub lists as income. Now, what you didn't hear was what the pay stub lists as a pre-tax deduction, which is the amount that this opt-out fee that is being paid to the employee who opted out of medical insurance. They had two choices to make before that happened. The first was a choice to join the county's benefits plan at all. As the evidence in the record shows, there were some employees who just decided they didn't want anything to do with the county's benefits plan. Religious reasons, whatever reasons, they didn't want it. They were not part of the plan. There was no issue of opt-out or anything there. Then, for the employees that benefits plan, they had the option of either purchasing a wide variety of health insurance, or if they didn't purchase health insurance, selecting a benefit, which was essentially an opt-out payment for opting out of the health insurance. They could still use that flex credit to purchase other benefits if they wanted, such as dental, vision, and so forth, even if they explained in our briefs is that opt-out amount, so the employees decide that one of the benefits they're going to select instead of health insurance is this opt-out payment. The county had no obligation legally to provide any amount to the employees for not selecting health insurance, but it chose to provide some amount as a benefit. Was that just as a result of a collective bargaining agreement? Yes. As to most of the employees, that was a result of, and the deputy sheriffs and the firefighters that issue in this case, it was a result of collective bargaining. You had both the employees making individual decisions on whether or not to be part of the plan, and then whether or not to select this opt-out benefit. The employees knew exactly what was going to happen with the amount they were selecting. They were told on the form, this is what the opt-out fee is, this is your flex credit, and you're going to get the difference paid back to you in cash, and that amount is included in regular rate. That's actually the floor. Okay, and that's the point that I think your answering brief cleared up, and the district court's decision may have suggested that that additional cash payment was excluded. In fact, it's not. The county does not take that position, and the county has been including that extra cash payment in the regular rate, so I don't think that's an issue. Okay, so the issue is the value of the opt-out fee. Correct, and whether the opt-out fee is somehow not, is a payment that should be included in the regular rate of pay. I will direct the court's attention to one of the cases that plaintiffs cited in their opening brief, Clark, it's a 9th Circuit decision from the 1990s. The interesting thing about what that case specifically held and went through in some detail is that a payment's function, not its form, controls whether or not it should be included in the regular rate, which is the opposite of what appellants are arguing here. They're trying to say that the form, because you had a statement about what was treated as income for IRC, Internal Revenue Code purposes, on a pay stub, that that somehow controls whether or not it should be included in the regular rate, and it doesn't, because functionally, on the very same pay stub, you had a pre-tax, meaning reduction in income, deduction for the amount that was being sent to the unions for health insurance, the union health insurance plan, essentially. Your opponent argued at the start of his argument today, and also in his reply brief, that a bona fide finding of the plan is irrelevant. Do you agree? No, we do not agree. I think a bona fide finding is very relevant, because that's the only way that that amount, that that opt-out amount, could possibly be included in regular rate, because that's never being, what Flores says is, when the amount is paid out in cash to the employer, it goes into regular rate. Let's talk about the exclusion, 2074, for a moment. Your opponent says it cannot apply, because essentially, it's not a voluntary receipt of a benefit. Rather, it's an involuntary deduction that's transferred to other employees, not the employee who gets the deduction. What do you say to that? Well, first of all, the concept that's involuntary is, I think, refuted by the very form the employees sign. They have to make two different decisions, to opt into the plan in the first place, and then to opt out of health insurance, and they know exactly what they're going to get. There's nothing involuntary about that. That's a conscious decision by the employees. The other aspect of that is that the amount of the flex credit is negotiated between the employer, the county, and the employee unions, the deputy sheriff and the firefighter union. So that's also, they can't say that's involuntary either. That's negotiated for collective bargaining purposes. You agree this is a violation of the IRS rules, as your opponent argues? No, I don't agree or concede that, because, and this case isn't about IRS rules, but the way that the amounts are listed on the pay stub is, you have an income amount, the flex credit amounts listed as an income, and right below it, pre-tax deduction, you have a reduction. My understanding is that's going to reduce, so when the employee gets their W-2 at the end of the year, that difference between the amount listed for income on the flex credit and the pre-tax deduction, that difference is what would show up as income on a W-2. I take it what you're saying in response to Mr. Mastagni's argument on the technical way in which this was structured is that basically everybody knows that even if the pay stub reflects the opt-out fee, we all know that it's actually being routed to a third party. Correct. It's an accounting mechanism on the pay stub that the county's using that doesn't change, again, the form doesn't change the function of this, which is these employees, the plaintiffs or appellants in the case, they never have access to this money. There's no possibility they can take it in cash, the portion that's being sent to the insurers, to the unions. They're never going to have that opportunity to take it in cash, which is different than a situation such as Flores where they actually get it on their paycheck. Are there any cases, I mean, it seems to me a lot of what's riding on this case is whether when you take an opt-out fee like this and use it for health insurance purposes, but not for the person who's, but for somebody who's opted out of the health plans, whether that fits within the E-4 exception. That seems to be, to me, one of the main issues in this case. Is there any case that's addressed that that kind of arrangement? I'm not aware of any case that has addressed that type of arrangement. I will note, though, that in the language of 207 E-4, it talks about a plan that the payment and, let me see if I can get the exact language here, but that the payment is for the plan as a whole, not for individual employees. Where are you looking here? Hold on just a second. So it says contributions irrevocably made by an employer to a trustee or a third person pursuant to a bonafide plan for providing, etc., or similar benefits for employees. Right. It doesn't say anything about individual employees. It says the contributions. This is looking at the whole plan and saying these contributions are made to the plan as a whole for the benefit of the employees in the plan as a whole. And that's exactly what happens here, is that these, this opt-out fee benefits the viability of the plan as a whole because the purpose of the plan is to provide for health, or one of the purposes is to provide for health insurance and health benefits for employees. So you're saying it just doesn't matter if these particular employees participated in the plan or not. What matters is whether the money is being used for a plan that was essentially available to them. Yes. On the issue of the bonafide, because I do think in order for you to prevail on everything, you do have to meet that threshold. What's your argument as to why this was bonafide? And what's your argument as to how we should deal with this 20% incidental rule? Well, I'll start with the 20%. As we've noted in our brief, as the interpretation, it has not been adopted pursuant to formal rulemaking. It is a, there isn't much to support it there, but the point, but what I will say is the point of the 20% rule, the point of the DOL interpretation, is that in 778.215A5, what that talks about is that the more, the plan's not bonafide if more than an incidental amount of payments are paid out to the employees in cash. Can I just pause you there? When we're talking about, when we're drawing a circle around what is the plan, is the plan for each of these units of employees, or is the plan both of them combined, or is the plan all county employees? In other words, how far are we drawing this? Well, that's a good question. Because the farther you draw it, then the lower the number. Right, but even if you focus, in our, in this particular case, if the 20, assuming the 20% rule does apply, it doesn't matter which plan you look at, because all of them are under 20%. Now, the deputy sheriff got pretty close to 20% as the amounts increased over the years, but, you know, and the other, the non-safety employees are in the four to eight percent range, so they're, that's a much lower amount. These numbers that you're telling us, those are with the opt-out fee not included as, not treating the opt-out fee as cash? Correct. And, and I, I don't think it would be, would be proper to treat the opt-out fee as cash, because the whole purpose of that bonafide analysis is what percentage of the plan goes to employees as cash. So when the opt-out, that opt-out fee, that never gets into their, their pocket. Function over form. Exactly, exactly. Is the 20% a hard, fast rule, or is it a, not such a bright line? It could be a little above, a little below, where does the line get drawn, or do we not even need to decide that? Well, first of all, I, in, in a sense. You accept your opponent's arguments, we do, the way he calculates it. We would have to decide whether 40% is incidental. Well, I, I think the Ninth Circuit and floor has talked about 42 to 46% not being incidental, so you had, I mean, that's part of that decision, but those aren't the facts in this case. And when you talk about should it be a bright line rule, we don't think it should, because as we noted in our brief, when you have a bright line rule about what percentage of payments are received by employees as cash back, that amount's going to change from year to year, and that's based on nothing the employer does. That's solely up to the employees as far as how much, you know, an employee's spouse move, you know, changes jobs and gets a great health insurance plan, so they're going to opt out the next year. Well, that amount could push the, that opt-out cash the next year could push from 19.9 to 20.1%, perhaps. So a three-year moving average is one example that one might use, as opposed to year by year? I think, I think some, some amount of discretion is necessary simply because of the fact that this is a, this, this is the type of situation determining whether the cash is incidental, where you have to look at the as a whole, you have to look at what the purpose of the plan is, you have to look at, you know, where these amounts are being paid. Why are they being paid out? And in this case, the, the plan is set up clearly to provide benefits for employees, and that's exactly what 2074 says, that those types of payments should be excluded from the regular rate. Your opponent cited 29 CFR 531.40, as they argue that supports them. What's your response on that one? The, let me, hold on just a second, let me find that. The issue about the, whether this is unlawful type of kickback or, or this is, it's not, there's no, there's no kickback here, there's no, again, this goes back to the form over function argument that the, the payment that the, this payment functionally is a contribution to a benefit plan. It seems like the panel has exhausted his question, so unless my colleagues have any further questions, we're going to thank you for your argument this morning. All right, thank you. Let's hear rebuttal. Thank you, Judge. A couple quick points. First, the record is clear that the collective bargaining agreements do not agree to the opt-out  and there's no agreement. The box that council referred to, to, to opt-out simply says, medical opt-out plan must submit opt-out certification form with proof of eligibility, and then in parentheses, for example, 282.73 slash bi-weekly, which is the opt-out amount, but it is confusing because it doesn't identify it as the opt-out amount, and the opt-out fee is very close to the full allowance, so it's very likely that individuals opting out would look at that as the amount of money that they would receive, and it certainly is not anything that is an express agreement to the deduction, and to be voluntary, people have to have the right to decline. Also, defendant doesn't even dispute that the deduction is for the benefit of the employer, not the employee. In terms of— I don't know that they say that. I mean, their argument is it is for employees, which could include people who—it could include anybody, but it does not—you know, if people opt-out, that's their choice. Well, let me be more clear. It's not for the benefit of the employee subject to the deduction, and the law is very clear that it has to be for them. There's actually cases we cited where the defendant made an argument that, well, the deducted amount is being used to defray other employees' costs and give them to other employees, and the courts have said that's improper because it's not for the benefit— Which cases are you referring to? It was—it's in the brief, Your Honor. Ward was one of them, and then— All right, which case? Say it again. I believe Ward was one. That one actually dealt with a credit card. Ward? Okay. And the second one dealt with a house mother, and it was—I think Hearst was the case. It's in our briefing. I would also point the panel towards Carlino versus CHG medical staffing, where the Eastern District of California held that the fact that payments appeared as line items on employees' pay stubs is an indicator suggesting that those items were remuneration to be included in the employee's regular rate of pay. There's no evidence in the record that these were not actual income. In fact, the stipulations and admissions are the exact opposite. The trial court even found they were cash-in-lieu payments. To the extent that there is a genuine factual dispute over the nature of those payments, that would preclude summary judgment in favor of the defendant. And I would lastly, just back to the point that the court keeps raising, is if you look at 778-215-5A, it talks about you can't assign the benefits, and I think really what the defendant and the court were saying here is that these deductions were an involuntary assignment of the allowance to the opt-out plaintiffs where it was deducted and then reassigned to pay for other employees' benefits. And even if it's treated that way, which I don't think factually it can be, it would be impermissible under the regulations. And it really is pretty simple, is these amounts, these allowances are paid as direct income by defendant's own admission to the employees. And under the regulations cited in our brief, that income, that regular rate is calculated on an individual basis, and that income has to be included in the regular rate, and that regular rate has to be calculated pre-deduction unless the employer can establish an entitlement to an exemption. And while the use of those deducted amounts may properly be excluded from the employees who purchase health insurance to the extent they're used to purchase their health insurance, they're not used for the health insurance of the people subject to the deductions. I think we have your argument. Do you have a question? One last question, perhaps. What are you asking us to do now that I've heard your arguments here today? Are you saying reverse and give you summary judgment? Are you saying reverse and remand for what kind of further proceeding? Where do we go? That's a great question, Your Honor. And to be candid, it depends a little bit on how the court rules on the various issues that are presented. We would submit that there is no factual dispute that the allowance is paid as income to the opt-out plaintiffs, and so summary judgment should be granted in favor of the appellants. But minimally, if this turns on a factual dispute over the nature of those payments, it would not warrant summary judgment in favor of defendants. But isn't the factual dispute that you've argued, isn't that fully laid out in the court below and on appeal? It is, Your Honor. And candidly, I believe the trial court ducked that issue. And if you look at the conclusion, the trial court essentially said these allowances are cash-in-lieu payments. The plan is bona fide, so they can all be excluded. And that's dispositive of all of these other claims. And they never even addressed the issue of whether or not the allowance were income to the employees or whether the regular rate should have been calculated on a pre-deduction basis. Okay. Thank you very much, Mr. Mastagni and Mr. Walter. Thank you. Thank both counsel for the briefing and argument this morning. This case is submitted.
judges: RAWLINSON, BRESS, Zouhary